IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ANTONIO MENDEZ-MORENO,<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 1:14-cv-00045-TC |

Petitioner Antonio Mendez-Moreno and his son, Antonio Mendez, Jr., were indicted on one count of possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (Indictment in United States v. Mendez-Moreno, 1:12-cr-00028, Dkt. No. 1.)[1] Mr. Mendez-Moreno faced a mandatory minimum sentence of ten years and a maximum life sentence. Later, as part of a plea agreement between Mr. Mendez-Moreno and the United States, Mr. Mendez-Moreno plead guilty to a felony information charging him with misprision of a felony, a violation of 18 U.S.C. § 4, which carries a three-year statutory maximum penalty.

In the Statement by Defendant in Advance of Plea of Guilty, signed by both Mr. Mendez-Moreno and his attorney, Mr. Mendez-Moreno agreed that he would plead guilty pursuant to 11(c)(1)(C) of the Federal Rules of Criminal Procedure to the charge in the felony information

---

[1] All citations to the record will be to the criminal record in Case No. 1:12-cr-00028 unless otherwise specifically noted.

and agreed to waive, among other rights, the right to file an appeal or a motion under 28 U.S.C. § 2255. (Dkt. No. 106 at 1-4.) In exchange, the United States agreed to a sentence of three years and agreed to dismiss the indictment against Mr. Mendez-Moreno. (Id. at 4-5.) The court accepted Mr. Mendez-Moreno's guilty plea and sentenced him to three years in custody, the agreed-upon sentence.

Mr. Mendez-Moreno, acting pro se, has now filed a petition pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside, or correct his sentence. In his petition, Mr. Mendez-Moreno contends that he was denied effective assistance of counsel for the following reasons: his counsel failed to file an appeal; his counsel did not explain the consequences of the plea agreement; the government breached the plea agreement; the guidelines were not correctly calculated; and there was a failure to specify drug quantities.

The court has considered each of Mr. Mendez-Moreno's arguments and concludes that he did not receive ineffective assistance of counsel and **DENIES** his petition.

## ANALYSIS

To demonstrate ineffective assistance of counsel, "a petitioner must establish both that his attorney's representation was deficient and that he was prejudiced by that deficiency." James v. Gibson, 211 F.3d 543, 555 (10th Cir. 2000), cert. denied, 531 U.S. 1128 (2001) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). "To succeed on the deficiency prong, a petitioner 'must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" Id. at 555 (quoting Strickland, 466 U.S. at 689). "Judicial scrutiny of counsel's performance is highly deferential." Id. To succeed on the prejudice prong, a petitioner "must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. There is a strong presumption that counsel provided effective assistance, and a § 2255 petitioner has the burden of proof to overcome that presumption. James, 211 F.3d at 556.

  A. **Failure of Counsel to File a Direct Appeal**

When a petitioner claims his counsel was ineffective for failing to perfect an appeal, prejudice is presumed, and the petitioner must only satisfy the first prong of the Strickland test—that counsel's performance fell below an objective standard of reasonableness. Romero v. Tansy, 46 F.3d 1024, 1030 (10th Cir. 1995) (citing Abels v. Kaiser, 913 F.2d 821, 823 (10th Cir. 1990)). The Tenth Circuit addressed the parameters of criminal defense counsel's responsibility to perfect an appeal in Baker v. Kaiser, 929 F.2d 1495 (10th Cir. 1991). The petitioner's attorney in Baker failed to file a timely notice of intent to appeal. Although the petitioner did not tell his attorney that he wished to appeal, no one from counsel's office contacted the petitioner during the ten days within which he was required to file the notice of intent to appeal. The Baker court held that the Sixth Amendment's guarantee of effective counsel requires that counsel explain the advantages and disadvantages of an appeal, advise the defendant about whether there are meritorious grounds for an appeal, and inquire whether the defendant wants to appeal his conviction. Id. at 1499; see also United States v. Youngblood, 14 F.3d 38, 40 (10th Cir. 1994).

 Here, however, the court concludes that Mr. Mendez-Moreno's counsel was not ineffective when he did not file an appeal for Mr. Mendez-Moreno. As part of the plea agreement, Mr. Mendez-Moreno waived his right to file an appeal. (Statement by Def. in Advance of Plea of Guilty, Dkt. No. 106 at 4.) In exchange, the government agreed, among other things, to enter into a binding agreement, if the court agreed, for a three-year sentence for Mr.

Mendez-Moreno. (Id. at 4-5.) Because Mr. Mendez-Moreno was contractually bound not to file an appeal, his attorney was not ineffective when he did not file one.

    B. <u>Failure to Explain the Plea Agreement</u>

Mr. Mendez-Moreno appears to argue that he did not understand the consequences of pleading guilty. But the record of the change of plea hearing belies this argument. Throughout the hearing before the Honorable Paul M. Warner, Judge Warner carefully questioned Mr. Mendez-Moreno about whether he understood his constitutional rights, whether he had ample time to discuss the case and the consequences of pleading guilty with his attorney, and whether he fully understood the plea agreement. For example, Judge Warner explained that, in the plea agreement, the United States agreed to a three-year sentence in exchange for Mr. Mendez-Moreno's guilty plea on the misprision charge. Judge Warner further explained that the court could potentially impose a sentence of less than three years, but the government would then have the option to withdraw the plea agreement. After explaining the plea agreement in this way, Judge Warner warned Mr. Mendez-Moreno that he should not plead guilty unless he was prepared to receive a three-year sentence. Mr. Mendez-Moreno confirmed that he understood. (Change of Plea Hr'g Tr. 17-18, Apr. 29, 2103.)

Judge Warner asked Mr. Mendez-Moreno repeatedly whether he understood what Judge Warner was explaining. (See id. at 5, 8, 12, 13-15, 16, 17-18, 20, 21, 23.) Judge Warner asked many times during the hearing whether Mr. Mendez-Moreno had had time to discuss certain points with his counsel and whether he had understood each explanation. (See id. at 10, 11-12, 15, 22, 23.) Once, during the hearing, when it appeared that Mr. Mendez-Moreno did not fully

4

understand one of Judge Warner's questions, Judge Warner stopped the hearing to allow Mr. Mendez-Moreno and his attorney to confer. (Id. at 14.)

In sum, after reviewing the transcript of the change of plea hearing and the Statement in Advance of Plea, the court is convinced that Mr. Mendez-Moreno's argument that he did not understand the plea agreement is without merit.

### C. Breach of the Plea Agreement

Mr. Mendez-Moreno simply states, without support or specifics, that somehow the government breached the plea agreement. (Pet. at 17, Dkt. No. 1, Case No. 1:14-cv-00045.) Mr. Mendez-Moreno is wrong. The government agreed to a three-year sentence and to move to dismiss the indictment against Mr. Mendez-Moreno. The government did exactly as it agreed to do and the court sentenced Mr. Mendez-Moreno to three years in custody and dismissed the indictment.

### D. Sentencing Guidelines

Again without giving any details or argument, Mr. Mendez-Moreno states that his "sentence was further tainted in that its calculation and reliance on the unconstitutionally applied Sentencing Reform Act of 1984 violated Petitioner's Fifth and Sixth Amendment rights." (Id.) This argument is baseless. The court sentenced Mr. Mendez-Moreno to a three-year sentence, as he and the government had agreed. The court did not rely on the Sentencing Guidelines.

### E. Failure to Specify Drug Quantities

Mr. Mendez-Moreno does not indicate where or how there was a failure to specify drug quantities. Nor could he. Although the indictment charged him with possessing with intent to distribute "500 grams or more of a mixture or substance containing a detectable amount of

Methamphetamine," (Indictment, Dkt. No. 1), he plead guilty to a charge of misprision of a felony, a non-drug charge.

For the above reasons, the court orders that the petition in the above case is DENIED and DISMISSED.

DATED this 22th day of October, 2014.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge